## In re MEIGHEN.

### 214 N. W. 848.)

(File No. 6086.   Opinion filed July 19, 1927.)

1. **Attorney and Client—Attorney Held Guilty of Unprofessional Conduct in Assisting Client Securing Notes for Alleged Improper Conduct, and in Extorting Money on Behalf of Pregnant Client.**

   In disbarment proceedings, attorney who assisted client in securing notes on a charge of improper conduct and indecent assaults and prepared an affidavit declaring that there had been no misconduct and attested his client's oath thereto, and who in another affair extorted money from different men on behalf of pregnant unmarried client, who made claim against one only, held guilty of unprofessional conduct and an improper use of his office as an attorney in each of the affairs.

2. **Attorney and Client—Good Standing and Absence of Complaint of Recent Misconduct Will Be Considered in Fixing Attorney's Punishment.**

   In proceedings to disbar an attorney for unprofessional conduct, facts that he bore a good standing and that no complaint of any recent misconduct had been made are to be considered in mitigation of punishment.

3. **Attorney and Client—Six Months' Suspension Held Proper Punishment for Attorney, Assisting Client in Securing Notes for Alleged Improper conduct, and Extorting Money on Behalf of Pregnant Unmarried Client.**

   Where attorney assisted his client in securing notes on a charge of improper conduct and indecent assaults and prepared for his client an affidavit that there had been no improper conduct, and also extorted money from different men on behalf of a pregnant and unmarried client, who made claim against one only, held, that six months' suspension from practice was a proper punishment.

---

Note.—See, Headnote (1), American Key-Numbered Digest, Attorney and Client, Key-No. 38, 6 C. J. Secs. 47, 58; (2) Key-No. 58; 6 C. J. Sec. 93; (3) Key-No. 58, 6 C. J. Sec. 93.

In the matter of the disbarment of J. L. Meighen. Accused suspended from practice.

*A. L. Wyman, Clark & Henderson,* and *Orvis & French,* all of Yankton, for Accused.

*Buell F. Jones,* Attorney General, and *Bernard A. Brown,* Assistant Attorney General, for Prosecution.

MORIARTY, C. [1]   This is a proceeding instituted in this court for the disbarment of J. L. Meighen, an attorney licensed to practice in the courts of this state.

Hon. Byron S. Payne was appointed by this court to act as referee in the matter, and as such referee to hear the evidence and to make findings of fact and conclusions of law from the evidence presented.

The referee has filed his report consisting of the pleadings, a transcript of the evidence presented, and proceedings had at the hearing before the referee, together with the referee's findings of fact and conclusions of law.

The evidence and the findings cover three different charges of unprofessional conduct made against the accused, J. L. Meighen. For convenience, these charges will be referred to as the J. C. Greenfield charge, the Bucholz charge, and the Jim Hasek charge.

As to these charges the referee's findings are substantially as follows:

### J. C. Greenfield Charge.

The accused, J. L. Meighen, was practicing law at Scotland, in this state, from the year 1905 until the year 1922, and for the last three or four years has been practicing at Yankton.

During the year 1922, J. C. Greenfield was living at Avon, S. D., being then a retired physician and president of a bank at Avon. During the years 1921 and 1922 Greenfield had an office in a rear room of the building occupied by the aforesaid bank. At said time Greenfield was a married man, reputed to be wealthy, and was prominent in church and community affairs.

Louise Eberle was employed as stenographer and bookkeeper in said bank for three years commencing in June, 1919. W. F. Walpole was a druggist who conducted a drug store in Avon during the year 1922. At said time Walpole was on friendly and familiar terms with Louise Eberle, but during the first part of the year 1922 he had frequently expressed himself in unfriendly and threatening terms toward Dr. Greenfield.

During the early part of the year 1922 the said Walpole and Louise Eberle planned that Louise Eberle should demand and secure from Dr. Greenfield a large sum of money for alleged improper actions of Dr. Greenfield toward her. And prior to May 24 of that year Louise Eberle told Dr. Greenfield that unless he settled with her to her satisfaction she would circulate reports of improper relations between them, would tell Greenfield's wife that he had made improper advances toward her, the said Louise Eberle, and would sue him for damages, for indecent assaults upon her.

On the morning of May 24, 1922, Louise Eberle called the accused by telephone and asked him to come to Avon that day to assist her in a legal matter. The accused left his office at Scotland and went to Avon by automobile, arriving at Avon about noon. During that afternoon the accused conferred with Louise Eberle at three different times. That day Louise Eberle told Dr. Greenfield that she had engaged Mr. Meighen to act for her in her demands against him. At about 6:30 that evening Louise Eberle met Dr. Greenfield at his office in the bank building, and she asked the accused to come there, which he did. During that meeting in Dr. Greenfield's office the accused drew up three notes, aggregating $10,000, payable to Louise Eberle at three different dates. These notes were signed by Dr. Greenfield and delivered to the accused. After the notes were signed, in response to a request of Dr. Greenfield that he be given some paper to assure him that no further demands would be made upon him, and that he might have something to appease his wife in case she should ever hear of the transaction, the accused drew up an affidavit which was signed by Louise Eberle and sworn to before the accused as county judge of Bon Homme county. The affidavit recited that there had never been any misconduct toward Louise Eberle on the part of Dr. Greenfield or any improper relations between them.

Shortly after the execution of these notes an action was brought for their cancellation on the ground that they had been secured by fraud and duress, and they were finally cancelled by the court. The accused knew at the time the notes were executed that Dr. Greenfield was signing them, not in satisfaction of any valid claim, but to avoid unfavorable publicity which might cause

trouble between himself and his wife and injure him in his social and business relations.

From these findings of fact the referee makes the following conclusion of law:

"It is the conclusion of the referee, as a matter of law, that the participation of the accused in the Eberle-Greenfield affair was unprofessional and an improper use of his office as an attorney at law."

### The Bucholz and Hasek Charges.

The referee makes but one set of findings on these charges, the facts found being as follows:

In the latter part of 1919 a young woman, who was unmarried and was then pregnant, came to the office of the accused and consulted him. She then told the accused that one Albert Hasek was responsible for her condition, and the accused undertook to help her to recover from Hasek for her support and that of the child. The accused called upon Hasek at the farm where Hasek was living, and demanded $800 of Hasek, telling him that if he did not settle the matter he would be brought into court and would be put into jail. Hasek said that there were others mixed up in the affair and named one or more of those whom he alleged to be so involved. A few days later Albert Hasek left the state.

In the latter part of December the accused met a young farmer named Ben Bucholz. The accused told Bucholz of the young women's condition and that unless $800 was raised for her the matter would be turned over to the state's attorney. A few days later Bucholz went to the office of the accused and there met the accused and the young woman. He there paid $200 and took a receipt for $175 signed by the young woman and one for $25 attorney's fees signed by the accused.

In February, 1920, the accused met James Hasek, a brother of Albert Hasek. Accused told James Hasek that he knew where Albert was, and that Albert was not getting away, and that James had better settle for Albert. James Hasek understood from the statement of the accused that unless settlement was made Albert would be brought back and imprisoned. The accused urged James to make the settlement, and, to avoid trouble and annoyance to his parents, James paid the accused $250, for which he got a receipt signed by the young woman and witnessed by the accused.

The young woman never made any claim to the accused against any one except Albert Hasek. The demands made upon Ben Bucholz and others were made without any basis of fact and were calculated to secure settlements through duress and extortion. The settlement secured from James Hasek was secured by implied threats of trouble and annoyance to the Hasek family.

From these findings the referee makes the following conclusion of law:

"It is the conclusion of the referee, as a matter of law, that the participation of the accused in the transactions with Ben Bucholz and James Hasek was unprofessional and an abuse of his office as an attorney."

Under the head of "General Findings," the referee finds that the accused has borne a good reputation among the members of his profession and in the vicinities in which he had practiced law. And the referee calls attention to the fact that the charges relate to acts somewhat remote in point of time, and expresses the opinion that the irregular acts of the accused were due rather to a lack of understanding and appreciation of proper rules of conduct which an attorney should observe than to a willful desire to overstep the bounds of good conduct.

We have carefully examined the record in this proceeding, and, although there is some conflict in the evidence, we are satisfied that there is not only evidence to support the referee's findings, but that there is a clear preponderance of the evidence in favor of such findings. And we are satisfied that the referee is right in his legal conclusions made from these findings.

It is undisputed that on the evening of May 24, 1922, the accused was acting as attorney for Louise Eberle in the matter of her claims against Dr. Greenfield. And it is undisputed that, on the occasion of the meeting at Greenfield's office that evening, the accused assisted his client in securing from Dr. Greenfield the notes for $10,000, and then and there prepared for his client an affidavit declaring that she had no basis for any claim against Greenfield, and also then and there attested the oath of his client to such affidavit. The accused should have known that these acts were unethical and unprofessional. The notes which the accused assisted in extorting from Dr. Greenfield at that time were the same notes that were involved in the case of Greenfield v. Eberle

and Meighen, decided by this court in an opinion by Judge Polley, found in 48 S. D. 75, 202 N. W. 291. And in that opinion this court expressed what the accused should have realized while he was engaged in the transaction, viz., that either the notes were being extorted by blackmail, or that he was conniving in the committing of perjury by his client.

In the Bucholz and Hasek transaction, also, it is undisputed that the accused extorted money from different men upon a charge which he must have known could not be successfully prosecuted against more than one of them.

[2] The facts as to good standing of the accused and that no complaint of any recent misconduct is made against him do not constitute defenses to the charges now being prosecuted against the accused. But these facts may be considered in mitigation of the punishment to the inflicted on conviction of these charges.

[3] We find that the accused has been guilty of unethical and unprofessional conduct in the matters involved in this proceeding, and that, under all the circumstances shown by the record, the accused, J. L. Meighen, should be suspended from the practice of law in any of the courts of this state for a period of 6 months from and after the entry of judgment herein, and that said accused, J. L. Meighen, be required to pay all costs incurred in the prosecution of the proceeding.

Judgment will be entered accordingly.

CAMPBELL, P. J., and GATES, POLLEY, and BURCH, JJ., concur.

SHERWOOD, J., absent.